```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

| | | |
|---|---|---|
| Gary D. Wilder, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 2:12-cv-0064 |
| Terry Collins, et al., | : | JUDGE JAMES L. GRAHAM |
| | | Magistrate Judge Kemp |
| Defendants. | : | |

## OPINION AND ORDER

This is a civil rights case filed under 42 U.S.C. §1983. The plaintiff is Gary D. Wilder, a state prisoner. The complaint was referred to a Magistrate Judge for initial screening (which is required in all prisoner-initiated litigation involving claims against governmental officials) under 28 U.S.C. §1915A. The Magistrate Judge has recommended that the case be dismissed as barred by the applicable two-year statute of limitations, and for other reasons as well. Mr. Wilder objects to that recommendation. For the following reasons, the Court overrules his objections and orders that the case be dismissed.

I.

When objections are received to a Magistrate Judge's Report and Recommendation on a dispositive matter, the assigned District Judge "shall make a de novo determination ... of any portion of the Magistrate Judge's disposition to which specific written objection has been made ...." Fed.R.Civ.P. 72(b). After review, the District Judge "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the Magistrate Judge with instructions." Id.; see also 28 U.S.C. § 636(b)(1)(B). General objections are insufficient to preserve any issues for review – "[a] general objection to the entirety of the Magistrate's report has the same effects as would a failure

to object." Howard v. Secretary of Health and Human Servs., 932 F.2d 505, 509 (6th Cir. 1991).

II.

This case is subject to 28 U.S.C. §1915A, part of the Prison Litigation Reform Act. That statutory section requires the Court to review any complaint filed by a prisoner in which redress is sought from "a governmental entity or officer or employee of a governmental entity" and to dismiss the case if the prisoner's complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted ...." The Report and Recommendation points out that "'[a] district court is required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners.' McGore v. Wrigglesworth, 114 F.3d 601, 608 (6th Cir. 1997)." Report and Recommendation, Doc. No. 9, at 1-2. Mr. Wilder does not take issue with this statement of the law, and the Court adopts it as the appropriate standard under which to determine if Mr. Wilder should be allowed to proceed with this case.

Mr. Wilder also does not object to the Magistrate Judge's summary of what the complaint alleges. The most significant set of facts which Mr. Wilder alleges are those detailing the time when various events occurred. These are significant because the primary reason why dismissal of this case is being recommended is that the statute of limitations has run on Mr. Wilder's claims.

In his complaint, and again in his objections, Mr. Wilder acknowledges that his current medical problems began on April 1, 2007 when he experienced a sudden onset of severe pain in his left leg. According to him, nothing was done about that problem for over a year. On April 2, 2008, however, prison officials

sent Mr. Wilder to the Corrections Medical Center for an ultrasound test, which revealed two clots in that leg which had caused part of his leg tissue to die.  Shortly thereafter, his left leg was amputated above the knee.  He was sent back to the Corrections Medical Center around May 1, 2008.  All of these events occurred more than two years prior to January 2012, which is when Mr. Wilder submitted his civil rights complaint to the Court.

As more fully discussed below, Mr. Wilder argues that because he continues to experience problems arising from the amputation of his leg, this case is a "continuing violation" case which removes it from the operation of the statute of limitations.  He also alleges in his complaint, and repeats in his objections, that he has suffered an injury within the two-year limitations period - namely, some time in 2010 (the precise date is not set forth in the complaint, but in his objection, Mr. Wilder states this happened on June 15, 2010) he fell and broke his hip.  He attributes that fall to ongoing problems with the prosthesis he was given after the amputation.  He also claims that he has been unable to walk properly, and is confined to a wheelchair most of the time, because he was not given any physical therapy or other proper care following the hip fracture.  Because these latter events did occur within two years of his filing suit, the Court will discuss them separately from the events which occurred earlier.

### III.

In Browning v. Pendleton, 869 F.2d 989 (6th Cir. 1989), the Court of Appeals determined that the statute of limitations applicable to claims arising under 42 U.S.C. §1983 is the two-year statute of limitations found in Ohio Revised Code §2305.10.  The first question the Court must answer is whether Mr. Wilder has adequately alleged any facts which would allow him

to pursue claims for any events which occurred prior to January 2010, including the alleged improper failure to diagnose his blood clots in 2007, the failure to treat that condition for the next year, the subsequent amputation of his leg, or any problems he experienced post-amputation in either 2008 or 2009.  The answer to that question is clearly no.

In a filing made with his complaint, Mr. Wilder argued that the running of the statute of limitations should be tolled for equitable reasons.  The Report and Recommendation rejected that theory.  Applying a five-factor test derived from Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir. 1998), the Magistrate Judge concluded that neither the failure of Mr. Wilder's attorney to file an action in a timely fashion despite Mr. Wilder's best effort to have him do so, or the fact of Mr. Wilder's imprisonment, tolled the running of the statute of limitations.  The latter factor may toll the running of the statute against someone in prison, but not in favor of the imprisoned party.  Ohio Rev. Code §2305.15(B).  And as the Report and Recommendation points out, both state and federal courts have rejected the proposition that negligence or inaction on the part of an attorney hired by the injured party can save a claim from the statute of limitations.  See, e.g., Todd v. Baker, 2007 WL 188740, *2 (S.D. Ohio January 22, 2007); Byers v. Robinson, 2008 WL 4328189, *13-14 (Franklin Co. App. Sept. 23, 2008).  Those legal conclusions are correct, and Mr. Wilder does not make any compelling argument to the contrary.  The Court will therefore adopt the Report and Recommendation's reasoning as it relates to tolling the statute of limitations.

In his objection, however, Mr. Wilder presses a different theory as to why the statute of limitations does not bar his claims.  He asserts that under the "continuing violation" doctrine, as long as, within the applicable limitations period,

-4-

he has suffered from some injury which flows directly from an earlier constitutional violation committed by the defendants, his suit based on those earlier violations is timely.  In other words, he argues that his claim never accrued for limitations purposes until the last date on which the earlier medical errors affected him - and that date has not occurred yet, because he continues to suffer from complications from the amputation of his leg.  For the following reasons, the Court finds that theory inapplicable here.

The continuing violation doctrine can apply to §1983 claims. However, it is fairly limited in the situations to which it applies.  As the Court of Appeals recently explained,

> [A] "continuous violation' exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." Hensley v. City of Columbus, 557 F.3d 693, 697 (6th Cir. 2009)(citations omitted). "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 635 (6th Cir. 2007) (internal quotation marks and alteration omitted).

Broom v. Strickland, 579 F.3d 553, 555 (6th Cir. 2009).

Clearly, as it applies to the events of 2007 and 2008 about which Mr. Wilder complains, those events were all completed in those years, and there was no continuing wrongful conduct which, if it ceased, would have avoided the injuries which happened at that time.  In other words, once Mr. Wilder's condition was misdiagnosed (as he alleges), and once his leg was amputated, that injury was complete; nothing the defendants could have done after that date would have brought back his leg, or restored him to the condition he would have been in had the proper diagnoses and treatment been provided to him back in 2007.  Thus, to the

extent that any problems he now suffers from not having a leg, or not having been given either a proper prosthesis or proper training on how to use it, are attributable to the amputation and alleged lack of follow-up care which occurred in 2008 or 2009, such claims accrued in those years and are now time-barred.

  This conclusion is buttressed by cases involving the question of when a cause of action accrues for tortious injury. In such cases, "[t]he general rule is that a tort cause of action accrues when there has been a violation of legally protected interests. See Restatement (Second) of Torts §899, comments c and e (1977). This violation usually occurs when the tortious event is committed." Hicks v. Hines, Inc., 826 F.2d 1543, 1544 (6th Cir. 1987). In Hicks the plaintiff had been exposed to certain chemicals in the workplace which eventually led to his developing bladder cancer. He filed suit shortly after the cancer was diagnosed, but well after he experienced other problems from the chemical exposure, including a period of total blindness. The blindness occurred outside the applicable limitations period. The Court of Appeals held that a cause of action based on the tortious act accrues when "a legally cognizable but relatively small injury" occurs, even if the full extent of the injury is not known until a later date. Because the plaintiff's blindness both resulted from the chemical exposure and occurred more than three years before he filed suit based on his diagnosis of bladder cancer, his claim was time-barred.

  The present case is indistinguishable from Hicks to the extent that Mr. Wilder's claim is based on the alleged misdiagnosis, amputation, and allegedly improper follow-up care in 2008 and 2009. Mr. Wilder unquestionably suffered a legally cognizable injury as a result of those events, and the fact that the consequences of those injuries persist to this day does not alter the fact that his claim of deliberate indifference to

serious medical needs accrued at the time the injuries occurred. See also Hughes v. Vanderbilt University, 215 F.3d 543 (6th Cir. 2000)(holding that a plaintiff who alleged ongoing injury from having ingested radioactive iron in 1945, including weight loss, blood problems, and tumors, filed suit too late because she waited until more than one year (the statute of limitations for §1983 actions in Tennessee) after she reasonably could have discovered the alleged wrongful acts of the defendants to file her complaint); cf. Tausch v. Riverview Health Inst., 187 Ohio App.3d 173, 183 (Montgomery Co. 2010)(cause of action for medical malpractice accrued when "a 'cognizable event' occurred that put the party on notice that his injury is related to a specific medical procedure and of the need to pursue his possible remedies").  The amputation of his leg was a "cognizable event" that certainly put Mr. Wilder on notice that his injury, that is, the loss of his leg, related to the claimed improper actions of prison officials in diagnosing and treating his blood clots, and he actually retained an attorney to pursue this exact claim within the limitations period.  Thus, there is simply no merit to his argument that his continuing medical difficulties stemming from the defendants' alleged unconstitutional actions in 2007 and 2008 have prevented his §1983 claim for deliberate indifference from accruing.  That claim accrued prior to January 2010, and his complaint, filed in January 2012, is untimely as to the diagnosis and treatment of his blood clots, the amputation of his leg, and any lack of proper follow-up care which occurred before January 2010.

IV.

Mr. Wilder is correct, however, in his assertion that if he received any type of substandard medical care after January 2010, a §1983 claim based on that care would not be time-barred.  As noted above, he asserts that he fell and broke his hip in June

-7-

2010, and that but for the improper care he was receiving at that time, this injury would not have occurred. While such a claim (assuming that it based on alleged deliberate indifference to a serious medical need) is not barred by the statute of limitations, any such claim in the complaint is subject to dismissal for other reasons.

The complaint is fairly short on allegations about the June 2010 incident. It states that after Mr. Wilder was transferred from the Corrections Medical Center to the Hocking Correctional Facility, where he now resides, he "fell three (3) times trying to learn to walk on his own." Complaint, Doc. 2, at 5. The complaint does not allege when the transfer to Hocking took place. It then states that "the last time Petitioner fell was in 2010 when he fractured his right hip and has now a steel plate with two screws on the inside of his right hip. Because he had no physical therapy at HCF to this day I can only use a walker part of the time to walk with. I have to still use the wheelchair most of the time because of the lack of proper physical therapy and medical care." Id.

Only two defendants are identified with this claim. One is the Warden of the Hocking Correctional Facility, Mr. Banks, who, according to Mr. Wilder's complaint, was "legally responsible for my medical needs and care." The other is an unnamed physician identified only as "Doctor John Doe #12 (Respondent #20)," who was allegedly "responsible for the lack of proper physical therapy." Id.

When a complaint is screened under §1915A, it is subjected to the same scrutiny as if a motion to dismiss for failure to state a claim had been filed under Fed.R.Civ.P. 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). That means, among other things, that the pleading standard contained in Fed.R.Civ.P. 8(a), as construed by the Supreme Court in Ashcroft

-8-

v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), applies. Id. Under that pleading standard, a plaintiff must plead facts, not legal conclusions, to support the claims in the complaint, and it must be plausible, from the facts pleaded, that the plaintiff could recover against the defendant.

Taking the claim against the Warden first, the only facts which have been pleaded are those relating to Mr. Wilder's fall and the alleged lack of medical care he has received at HCF. His assertion that the Warden is legally responsible for that care is not only a legal conclusion rather than a fact, it is an incorrect legal conclusion when asserted in the context of a §1983 action. In order for governmental officials to be liable under §1983, they must have been personally involved in the alleged unconstitutional conduct; the fact that they may have supervised other officials who acted unconstitutionally, or that they have overall supervisory responsibility for a particular institution, is not enough to make them liable. As the Court of Appeals has stated, "a public official may not be held liable under §1983 for the misconduct of those the official supervises unless the plaintiff can demonstrate that the official is culpable because he was personally involved in the allegedly inadequate medical care provided ... or that he otherwise encouraged or condoned others in providing such inadequate medical care." Estate of Young v. Martin, 70 Fed. Appx. 256, 260 (6th Cir. 2003), citing Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Unless a pleading contains some factual allegations which go beyond identifying a defendant as a supervisory official, it is subject to dismissal for failure to state a claim. See, e.g., Tate v. Lowery, 73 Fed. Appx. 866, *2 (6th Cir. Sept. 8, 2003)(affirming the dismissal of a complaint for failure to state a claim against a prison supervisor because

"[t]he complaint contained no allegation that [the supervisor] had any personal involvement in [the plaintiff's] medical treatment"), citing Bellamy, supra.  Mr. Wilder's complaint against Warden Banks is similarly deficient and could not survive a motion to dismiss.

That leaves only the claim against the unidentified physician, John Doe #12.  As noted above, the entirety of the allegations against this doctor consists of this sentence: "Also, **Doctor John Doe #12 (Respondent #20)** was responsible for the lack of proper physical therapy."  Complaint, at 5.  Standing alone, this allegation is insufficient to plead an Eighth Amendment deliberate indifference claim against the unnamed defendant.

First, it is impossible to tell from this allegation if the "responsibility" attributed to the unnamed doctor is some type of personal involvement in approving or providing physical therapy, or supervisory responsibility over others at the institution who are more directly responsible for Mr. Wilder's care.  If it is the latter, this claim fails for the same reason as the claim against Warden Banks.

Even if Mr. Wilder is attempting to assert some type of personal involvement, however (and he has pleaded no facts describing either the nature or level of that involvement), there are no facts in the complaint from which it could be inferred that the doctor had the required mental state to satisfy the "deliberate indifference" test set forth in Farmer v. Brennan, 511 U.S. 825 (1994).  That test absolves a prison official from liability in medical care cases unless the plaintiff can show that the official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety...."  Id. at 837.  The failure to plead facts from which this component of an Eighth Amendment claim can be inferred requires dismissal of such a claim.  See, e.g., Schmidt v. Healthcare Services, 2012 WL 289323, *3 (W.D.

-10-

Mich. Jan. 31, 2012)(holding that "[i]t is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants" and that if "[t]here is nothing in Plaintiff's allegations which supports the subjective component of an Eighth Amendment claim" the complaint is properly dismissed); Piatt v. Collins, 2010 WL 5019419, *2 (S.D. Ohio Oct. 19, 2010)(holding that an allegation that a prison health care administrator refused to do anything about the plaintiff's pain "is tantamount to an unadorned 'the-defendant-unlawfully- harmed-me accusation' prohibited by Iqbal"), adopted and affirmed 2010 WL 4976847 (S.D. Ohio Dec. 1, 2010).  From the brief allegation against Dr. John Doe, one cannot plausibly infer that the doctor was aware of a risk that Mr. Wilder would fall and fracture his hip, or that he disregarded the risk (if there was one) that such an injury was substantially certain to occur.  Further, it is equally likely that Mr. Wilder has alleged only negligence on the doctor's part in failing to prescribe the "proper" type of physical therapy for him, but mere negligence on the part of prison officials is not actionable under §1983 even if it rises to the level of medical malpractice.  See Comstock v. McCrary, 273 F.3d 693, 703 (6th cir. 2001)("a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment").

It is certainly possible that, through an amendment to the complaint, which does not really focus on the events of 2010 so much as the events of the prior years, Mr. Wilder could cure these deficiencies.  However, the Court of Appeals has also "held that the district courts are not to permit plaintiffs to amend a complaint to avoid dismissal pursuant to th[e] provisions [of §1915A]."  Benson v. O'Brian, 179 F.3d 1014, 1016 (6th Cir. 1999); see also Mobley v. Mohr, 2011 WL 4055234, *3 (S.D. Ohio Sept. 12, 2011)("no amendments to the complaint are permitted in

-11-

order to cure pleading deficiencies which are revealed by [the initial] screening").  Because the complaint cannot survive an initial screening, no amendments are allowed, and the case must be dismissed.

V.

For all of the reasons discussed in this Opinion and Order, plaintiff's objections (Doc. 13) are **OVERRULED** and the Report and Recommendation (Doc. 9) is **ADOPTED AND AFFIRMED**.  This case is **DISMISSED** under 28 U.S.C. §1915A.  The dismissal of all time-barred claims is a dismissal with prejudice; the dismissal of the claims which accrued less than two years before the filing of this case is without prejudice, given that the claims, as stated, are so short on factual allegations as to be frivolous and that no specific defendants other than a John Doe physician and the Warden are named in these claims.  Cf. Denton v. Hernandez, 504 U.S. 25, 34 (1992)("Because a §1915(d) dismissal is not a dismissal on the merits, but rather an exercise of the court's discretion under the in forma pauperis statute, the dismissal does not prejudice the filing of a paid complaint making the same allegations.  It could, however, have a res judicata effect on frivolousness determinations for future in forma pauperis petitions.").

The Clerk shall mail a copy of the complaint, the Report and Recommendation, and this Opinion and Order to each of the defendants.

**IT IS SO ORDERED.**

                                        s/ James L. Graham
                                        JAMES L. GRAHAM
                                        United States District Judge

DATE: May 8, 2012